[Filed April 24, 1889.]

J. N. SPERRY ET AL., APPELLANTS, *v.* THE CITY OF ALBINA ET AL., RESPONDENTS.

A SUIT IN EQUITY CANNOT BE MAINTAINED BY A LOT-OWNER in any incor-porate city against the officers thereof, to restrain proceedings in the improvement of a street therein, on which such lot abuts, upon an appre-hension that the officer will attempt to charge a part of the expense of the improvement upon the lot. Such suit can only be maintained where there has been an attempt under the proceedings to sell the lot, or the proceed-ings are of such a character that they necessarily will cast a cloud upon the title of the lot-owner.

APPEAL from a decree of the circuit court for the county of Multnomah, dismissing the appellants' complaint after a demurrer thereto had been sustained. The appellants alleged in their complaint that the respondents, the city

of Albina, is a municipal corporation created by an act of the legislative assembly of the state of Oregon, approved February 4, 1887, and was vested with the usual and ordinary powers of a body corporate, and that the other respondents were its mayor, common council, and recorder; that among the powers to be exercised by the said officers was the authority to grade, improve, and keep in repair highways, streets, and alleys within the city, and to provide a means of defraying the expenses thereof; that among the streets and highways within the corporate limits of the city was Helm Street, upon which appellants were adjacent and abutting property owners; that on the twenty-fourth day of February, 1888, the said city council ordered to be published, under the hand of the recorder, the following notice: "Notice is hereby given that the common council of the city of Albina, Multnomah County, Oregon, proposes to improve Helm Street, in said city, by grading the said Helm Street the full width thereof to the established grade from the north line of Russell Street to the center of Knott Street, and to grade the east half of Helm Street to the established grade from the center of Knott Street to the north line of Morris Street, and also by laying a first-class sidewalk from the north line of Russell Street to the south line of Knott Street, and by laying a third-class sidewalk from the south line of Knott Street to the north line of Morris Street, with cross-walks as provided for in section 7 of Ordinance No. 13." The said notice was so ordered, and was published, under the pretense and claim that it made public the fact that the said council proposed to grade and improve that portion of said Helm Street therein designated, and to which portion appellants' property is adjacent, in the manner and after the form prescribed by the charter of said city. That on the twenty-third day of April, 1888, the said council did un-

lawfully, and without authority having by them first been established, make and enter into a contract with one Peter Lynch for the pretended improvement of the aforesaid portion of Helm Street, and by the terms thereof unlawfully creating a liability and lien against and upon the property hereinafter enumerated; and that the said Lynch, acting under said unlawful contract, did thereupon proceed to dig up and disturb the surface of the aforesaid portion of Helm Street, and to tear up and destroy the sidewalks thereon, to the irreparable damage of appellants; that on the twenty-first day of July, 1888, the said council did make and publish a certain ordinance numbered 37, declaring the cost and accepting the aforesaid unlawful and damaging work of the said Peter Lynch, and assessing the cost thereof, and did by said ordinance direct the respondent John T. Hughes, which he so did, to enter such assessments in the docket of city liens, unlawfully, against the several lots and parts of lots, and in the respective amounts as follows, to wit: J. L. Sperry, lot 1, block 2, $66.72; J. L. Sperry, lot 2, block 2, $60.68; J. L. Sperry, lot 3, block 2, $39.75; J. L. Sperry, lot 1, block 3, $62.60. The list includes, also, twelve other names, with the number of lot and block, and the amount assessed upon each; that said assessments stood upon respondents' lien docket, and appear unlawfully as liens against the several lots and parts of lots above enumerated and mentioned, and as a cloud upon the several titles thereto; and that appellants are informed and believe that the said council will proceed, or order to proceed, without delay the collection and enforcement of said pretended liens against said property, and disturb the several titles thereto, which are in appellants. And appellants further alleged for themselves and others owning the respective lots adjacent to the pretended improvement of Helm Street, and against which said illegal

assessments were made and entered in the lien docket, that the aforesaid digging and tearing up of said Helm Street was without benefit to the general public, and did not enhance the value of the adjacent property above enumerated and mentioned, and sought by said council to be charged therewith; but, to the contrary, did irreparable damage to the same; that they had no notice published or given them of the intention of said council to cause to be made the said pretended street improvement at the expense of the property adjacent thereto, as required by subdivision 6, section 18, of the charter of the city of Albina, and that they were deprived of their privilege of remonstrance; that appellants have no speedy and adequate remedy at law. Wherefore, by reason of the foregoing premises, they pray judgment, etc. The demurrer was upon the ground that the complaint did not state facts sufficient to constitute a cause of suit.

*W. W. Page*, for Appellants.

*P. L. Willis*, for Respondents.

THAYER, C. J.—The question to be determined in this case is as to the sufficiency of the appellants' complaint. The suit appears to have been predicated upon the ground that the proceedings to improve the street were irregular, and that the respondents would undertake to charge the expense of it upon their property abutting upon the street. The apprehension that such an attempt would be made seems to have arisen from the fact that the city council passed the ordinance numbered 37, declaring the costs, accepting the work of the contractor, and directing an entry of the assessment to be made in the docket of city liens, as the appellants term it. But if their view of the affair is correct, they are in no imminent danger of having to pay the expense of the improvement of the

street. They allege, in effect, that no notice had been published or given of an intention upon the part of the said council to cause the improvement to be made at the expense of the property adjacent thereto, as required by subdivision 6, section 18, of the charter. That subdivision provides, as will be seen by a reference to the charter, as follows: "The council have power and authority within the corporate limits . . . . to construct, clean, and repair sidewalks and cross-walks, or provide for the construction, cleaning, and repairing of said walks adjacent to real property by the owners of such property, and also for the making, cleaning, and repairing gutters; to grade, gravel, pave, plank, or otherwise improve and keep in repair highways, streets, and alleys; provided, that no property shall be assessed for the construction of such improvement for more than one half of its last county assessed valuation; provided further, that if two fifths of the property on such streets and adjacent thereto shall oppose such improvement by remonstrance, then such improvement shall not be ordered; provided further, that no property shall be taxed more than once for such improvements; and provided further, that in case of proposed street improvements, where the improvements proposed are to be made at the expense of the property adjacent thereto, thirty days' notice of such intention shall be given, by posting three notices thereof in public places of said city." Now, if this provision requires the notice to specify that the proposed street improvement is to be made at the expense of the property adjacent thereto in order to render it liable for the expense of the improvement, as the appellants seem to claim, and which I am inclined to believe is correct, then certainly no harm can come to the appellants on account of the proceedings herein. The city council, not having given any such notice, as required by the provision, will not be likely to proceed to enforce payment of

the pretended liens against the property, or disturb the several titles of the appellants thereto; and if it should attempt to do so, its proceedings would be a nullity. At all events, the city council has not attempted to cause the property to be sold to satisfy the cost of the improvement, and until it takes some decided step in that direction, the appellants' rights in the premises will not be in such jeopardy as to demand the issuance of an injunction; and whether the appellants would then be entitled, under the rule adopted by courts of equity, to invoke such a remedy, is very doubtful.

Mr. Pomeroy, in his work on equity jurisprudence, volume 3, page 437, says: "In the absence of statutes giving *prima facie* validity to deeds or other proceedings, the following doctrine seems to be sustained by the great majority of American decisions: Where the instrument or proceeding constituting the alleged cloud is absolutely void on its face, so that no extrinsic evidence is necessary to show its invalidity, and where the instrument or proceeding is not thus void on its face, but the party claiming under it, in order to enforce it, *must necessarily* offer evidence which will *inevitably* show its invalidity and destroy its efficacy, in each of these cases the court will not exercise its jurisdiction either to restrain or to remove a cloud, for the assumed reason that there *is* no cloud."

The learned author indulges in a degree of criticism upon the rule as thus laid down which may be eminently just; but it is very questionable whether the court would be willing to disregard it in any case, unless some very extraordinary circumstance intervened.

It will be observed by an examination of the charter of the city of Albina that it makes no provision concerning the validity of a tax deed, or deed given upon the sale of property for street improvements. The validity of such a

deed under the provisions of the charter of that city must depend entirely upon the regularity of the proceedings authorizing the sale of real property for the non-payment of a tax or street assessment; and the party claiming under it is required to prove the regularity of the proceeding before the deed can be considered as having any force or effect. Neither does the said charter provide for any docket of city liens; hence the allegation in the complaint in regard to the assessment for the improvement of said Helm Street, standing upon the respondents' "lien docket," or being entered in the "lien docket of the respondents," amounts to nothing. The city authorities may have devised such a book, and caused the pretended assessments to be entered therein, but that would not give them the apparent effect of a legal lien. Such act would no more create a cloud upon title than a memorandum in an ordinary account-book. It would not be admissible as proof of a lien upon the property without showing that the various steps prescribed in the charter had been taken which would constitute a lien. I am unable to perceive any tenable ground for the suit, and in my opinion the circuit court properly sustained the demurrer to the complaint.

The decree appealed from will therefore be affirmed.